NEIL D. GREENSTEIN, *Pro Se*
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone (347) 514-7717
Facsimile: (408) 280-2250
Email: ndg@techmark.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL D. GREENSTEIN,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | CASE NO. 3:21-CV-6283<br><br>COMPLAINT FOR VIOLATION OF FEDERAL LAW, BREACH OF FIDUCIARY DUTY, FALSE STATEMENTS MADE TO FEDERAL OFFICIALS AND FRAUD (INCLUDING INJUNCTIVE RELIEF) |

Plaintiff Neil D. Greenstein ("Plaintiff"), for his Complaint against the defendant, Charles Schwab & Co., Inc. ("Defendant" or "Schwab"), alleges on knowledge as to his own actions, and otherwise Plaintiff is informed and believes and thereon alleges, as follows:

## NATURE OF THE ACTION

1. This is an action for Schwab's violation of federal laws, breach of fiduciary duties owed to its customers, false statements made by Schwab to the United States agencies and fraud.

2. This action arises, in part, from Schwab's false and fraudulent statements to the Internal Revenue Service relating to information about its customers. In particular, Schwab, after having been notified of its erroneous Internal Revenue Service filing has

1  refused to follow the law including that set forth in Internal Revenue Code 6045 [26 U.S.C. §6045].

3.  This action also arises from Schwab's knowing, intentional, willful and malicious actions, and its steadfast refusal, after consultation with counsel, to correct its false and fraudulent actions to comply with federal and state law.  Schwab has, *inter alia,* intentionally mischaracterized certain securities as "covered" securities, and has revealed confidential information of certain customers to unrelated customers.

## THE PARTIES

4.  Plaintiff Neil D. Greenstein is a citizen and resident of the State of Nevada, having an address of 304 S. Jones Boulevard, #5431, Las Vegas, NV 89107.

5.  Defendant, Charles E. Schwab & Co., Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business at 211 Main Street, San Francisco, CA 94105.

## JURISDICTION

**Subject Matter Jurisdiction**

6.  This court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1331 in that this action arises under the laws of the United States.  This court further has original jurisdiction under 28 U.S.C. §1332(a) and (c) in that this action is between citizens of different states and involves more than $75,000, exclusive of interest and costs.   As to the causes of action under state law, this court further has supplemental jurisdiction under 28 U.S.C. §1367.

7.  There is an arbitration provision between the parties which may apply to certain of the issues herein, but not all of the issues.  The arbitration provision, *inter alia,* does not apply to the injunctive relief, at least as to preliminary injunctive relief, being sought in this action.

**Personal Jurisdiction**

8.  Personal jurisdiction is proper in the Northern District of California over Defendant in that defendant is a corporation organized under the laws of the State of

California and has its principal place of business in San Francisco.

## VENUE

9. Venue is proper in this district under 28 U.S.C. § 1391(b), (c) and (d). Defendant, Schwab, is incorporated in California, has its principal place of business in San Francisco, is subject to personal jurisdiction in the Northern District of California, and thus resides in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

10. The actions complained of herein were taken by or through Schwab's office in San Francisco and/or were approved by the legal department of Schwab in San Francisco. As such, this action is appropriately assigned to the San Francisco/Oakland office of the Court as set forth in LR 3-2(c).

## GENERAL ALLEGATIONS

**Nature of the Transaction between Plaintiff and Third-Party, Keebler**

11. Plaintiff has maintained brokerage accounts with Schwab for many years, and for over a decade such account has been managed by Independent Investment Advisors (the current Investment Advisor is herein sometimes "IA"). The full account number has been provided to Schwab and, upon request, will be provided to the court. For security purposes, the account in issue in this complaint is identified as "9090."

12. Schwab, as a securities broker, is a fiduciary and owes fiduciary duties to Plaintiff.

13. Many years ago, plaintiff entered into an arm's length business arrangement with a company called Keebler. Keebler was and always has been unrelated to plaintiff. Under that business arrangement, Keebler was obligated to pay plaintiff certain sums of money at various times and upon the happening of certain events. As is typical in such arm's length agreements, each party agreed to bear its own tax liabilities.

14. Keebler was also a customer of Schwab and maintained a brokerage account with Schwab. Plaintiff does not know Keebler's account number as that was private information to which plaintiff was not, and never was, entitled. Indeed, plaintiff had no

COMPLAINT FOR VIOLATION OF FEDERAL LAWS, BREACH OF FIDUCIARY DUTY, FALSE STATEMENTS TO FEDERAL OFFICIALS AND FRAUD – 3:21-CV-6283

-3-

idea of the profits and losses that Keebler incurred in its account with Schwab due to the fact that Keebler was an unrelated third party and plaintiff had no right to know Keebler's personal information.

15.  In March 2020, Keebler owed plaintiff certain sums of money.  Keebler and Plaintiff entered into a settlement agreement whereby Keebler was to pay money to Plaintiff for the obligations it owed to Plaintiff. A large portion of the money owed by Keebler to plaintiff was invested in Keebler's account with Schwab.

16. While Keebler could have sold the assets it held with Schwab and paid cash to plaintiff, the stock market was very volatile in March 2020.  The several days for Keebler to sell stocks, transfer cash to plaintiff,  and for plaintiff to re-purchase stock would have resulted in several days out of being "out of the market" and potentially a significant loss in investments.

17. As a result, Keebler and plaintiff agreed to transfer the securities in kind and further provided that each party was to bear their own tax burdens.  This was essentially a cash transaction but without the risk of investment loss.  Indeed, Keebler provided plaintiff with the value and fair market basis of the stocks that it paid to plaintiff in accordance with its obligations under the prior business arrangement.

18.  As explained further below, plaintiff paid tax on the gain/loss of its "investment" with Keebler and Keebler paid tax on its gain/loss on its investments including those maintained with Schwab.

19.  Under the Internal Revenue Code, plaintiff has a basis in the stocks received from Keebler in payment of Keebler's obligation to plaintiff as the value on the date of transfer.  At the time the assets were received by plaintiff, plaintiff's IA informed Schwab of plaintiff's basis in the securities.

20.  When plaintiff later sold some of the stocks, Schwab reported gains and losses to IRS based upon the basis that Keebler had previously in the securities and not the basis that plaintiff had in the securities.  In doing so, Schwab ignored the basis provisions of the Internal Revenue Code, and revealed the private and confidential information of

Keebler to Plaintiff.

21. When plaintiff learned of this error by Schwab, plaintiff first sought correction through his IA, then through the cost basis team at Schwab and then through Schwab's attorneys. Both the cost basis team of Schwab and Schwab's attorneys refused to correct the reporting.

22. During a conference call with the Schwab Cost Basis Team, Schwab admitted that it had not received any "transfer statement" under 26 U.S.C. §6045A stating that the basis should be a carryover basis or any basis other than fair market value at the time of transfer. The Schwab Cost Basis Team further stated that it considered the securities to be "covered securities" (as that term is used in the Internal Revenue Code).

23. Plaintiff provided a detailed factual and legal analysis to Schwab and Schwab refused to address the analysis. Instead, Schwab said it was not required to follow federal law.

24. Indeed, Schwab freely and fully admitted that the securities were not "covered" securities. Specifically, Schwab stated: "The movement of shares from [Keebler] ending in 9345 on 3/16/2020 was performed as a private transaction."

25. Schwab further stated in writing that: "[A] broker is not required to consider **transactions, elections, or events occurring outside the account** except for an organizational action taken by an issuer during the period the broker holds custody of the security." (emphasis added). In doing so, Schwab reinforced its admission and agreed that the transactions, elections, and events occurred "outside [of] the account."

26. Plaintiff specifically asked whether or not Schwab's legal department had been involved in the cost basis decision and, if so, for contact information so that plaintiff's tax lawyer specialist could communicate directly with the Schwab lawyer.

27. Schwab responded that the matter "was reviewed by their (sic) Corporate Counsel" and further stated "they (sic) will not be providing the name or contact information of any individuals that [your tax specialist] could reach out to." Simply put, Schwab affirmatively said if you don't like Schwab's decision to ignore federal tax law,

1  we will not discuss it, and you should sue!

**Schwab's Obligations under Internal Revenue Code §6045**

28. In accordance with 26 U.S.C. §6045 (a), Schwab was required to submit a return to the Internal Revenue Service identifying **the gross proceeds** of plaintiff as follows:

> Every person doing business as a broker shall, when required by the Secretary, make a return, in accordance with such regulations as the Secretary may prescribe, showing the name and address of each customer, with such details regarding gross proceeds and such other information as the Secretary may by forms or regulations require with respect to such business.

29. The reporting obligations of a broker, such as Schwab, vary depending on whether securities are "covered" or "noncovered." Internal Revenue Code [26 U.S.C.] §6045(g)(3)(A) provides:

> The term "covered security" means any specified security acquired on or after the applicable date if such security—
>
> (i) was acquired **through a transaction in the account** in which such security is held, (emphasis added)
>
> Or
>
> (ii) was transferred to such account from an account in which such security was a covered security, but only if the broker received a statement under section 6045A with respect to the transfer.

Treasury Regulation 1.6045-1(a)(16) [26 C.F.R. §1.6045-1(a)(16)] provides:

> "The term noncovered security means any security that is not a covered security."

30. A basic and simple statutory analysis. Schwab has already (and correctly) admitted that the securities were NOT acquired through a transaction in the account in which the security is held. Schwab recognized and admitted that the securities were acquired in a private transaction and due to a transaction, election, or events occurring outside the account. Thus, 26 U.S.C. §6045(g)(3)(A)(i) does not apply.

COMPLAINT FOR VIOLATION OF FEDERAL LAWS, BREACH OF FIDUCIARY DUTY, FALSE STATEMENTS TO FEDERAL OFFICIALS AND FRAUD – 3:21-CV-6283

-6-

31. Schwab has already admitted that it received no statement under 26 U.S.C. §6045A. Thus, 26 U.S.C. §6045(g)(3)(A)(ii) does not apply. Thus, by statutory definition the securities in issue are not "covered" securities. Indeed, Treasury Regulation 1.6045-1(a)(16) expressly provides that when the securities are not "covered" securities, they are "noncovered" securities. This analysis was brought to the attention of Schwab's Cost Basis Team and its legal department; yet, both have steadfastly refused to follow federal law and are treating the securities as "covered" securities. Such continued actions by Schwab, after having been provided the legal analysis, are not "negligent," but are willful, intentional, and malicious.

32. The difference between a "covered security" and a "noncovered" security is important to this dispute. 26 U.S.C. §6045(g)(1) and (g)(2)(A) provide:

> (1) If a broker is otherwise required to make a return under subsection (a) with respect to the gross proceeds of the sale of a **covered security**, the broker shall include in such return the information described in paragraph (2). (emphasis added)
>
> (2)(A) The information required under paragraph (1) to be shown on a return with respect to a **covered security** of a customer shall include the customer's adjusted basis in such security and whether any gain or loss with respect to such security is long-term or short-term (within the meaning of section 1222). (emphasis added)

Under 26 U.S.C. §6045(a), Schwab is obligated to report gross proceeds. But, if, and only if, the security is a "covered security," Schwab is also required to report the customer's adjusted basis and whether any gain is long-term and short-term.

33. Here, the securities by statutory definition were "noncovered" securities; yet, Schwab voluntarily and erroneously, and in violation of federal law, reported a basis of unrelated party, Keebler, and gains/losses based upon Keebler's basis and not the customer's (i.e., the plaintiff's) basis.

34. Schwab is knowingly, intentionally, willfully, and maliciously making false statements to the Internal Revenue Service all to the detriment of and harm to plaintiff.

**Even is Schwab is Allowed to Recant its Admission that the securities were acquired in a private transaction and due to a transaction, election, or events occurring outside the account, and that the private purchase of the securities by plaintiff is somehow deemed to be a "covered" security, Schwab is still making false statements to federal agencies.**

35. Schwab's legal obligation under 26 U.S.C. §6045(g)(1) and (g)(2)(A) is to report "**the customer's adjusted basis** in such security and whether any gain or loss with respect to such security is long-term or short-term." (emphasis added)

36. Internal Revenue Code §1012(a) provides:

> The basis of property shall be the cost of such property, except … [the exceptions are not applicable].

37. There is no legal provision identified by Schwab, or in the Internal Revenue Code, which provides for a carryover basis when there is an arm's length transaction between unrelated parties.  Carryover basis is typically provided when there is a "gift" of assets from one person to another – **which is not the case here** -- and then there is a gain on the sale.   See, for example, https://www.irs.gov/faqs/capital-gains-losses-and-sale-of-home/property-basis-sale-of-home-etc/property-basis-sale-of-home-etc in which the IRS explains carryover basis when there is a "gift."  Carryover basis can also apply in some related corporate transactions, but here it is undisputed that Keebler and plaintiff are not related corporations, but are unrelated and entered into an arm's length business transaction.

38. If Schwab was going to treat the securities as "covered," federal law obligated it (under 26 U.S.C. §1012(a)) to either use a fair market value at the time of acquisition, or rely upon the information provided by its customer.  Either way, the numbers would be the same!  Notwithstanding extensive discussions and legal analysis, and an express request by Plaintiff to Schwab to justify its position, Schwab has failed to provide any factual or legal basis for using the basis of an unrelated third-party.

39. Instead, Schwab has rejected federal statutory law and has instead applied its

COMPLAINT FOR VIOLATION OF FEDERAL LAWS, BREACH OF FIDUCIARY DUTY, FALSE STATEMENTS TO FEDERAL OFFICIALS AND FRAUD – 3:21-CV-6283

own arbitrary and capricious values and falsely and fraudulently reported those values to the Internal Revenue Service. Schwab's refusal to follow federal tax laws is causing harm and damage to plaintiff.

### FIRST CLAIM FOR RELIEF
### (Schwab's Violation of Federal Laws)

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 39 of this Complaint as if fully set forth herein.

41. Schwab has knowing, intentionally, wantonly, and maliciously violated federal laws to the detriment of plaintiff.

42. Plaintiff provided Schwab with a detailed legal analysis of the errors of Schwab's violations of Federal Laws due to its original false and fraudulent reporting to the Internal Revenue Service.

43. Both Schwab's Cost Basis Team and its Legal Department have refused to address any of the legal analysis provided by Plaintiff to Schwab. Schwab's refusal to correct its false and fraudulent statements to the Internal Revenue Service combined with its failure to address unchallenged legal arguments evidences Schwab's bad faith in its dealings with plaintiff.

44. Schwab's violation of federal law has caused harm and damage to plaintiff far in excess of $75,000 and in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (Schwab's Breach of Fiduciary Duty)

45. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 44 of this Complaint as if fully set forth herein.

46. Schwab owes certain fiduciary duties to its customers, including Plaintiff. Schwab's intentional and malicious failure to follow federal law in reporting transactions, and its steadfast refusal to correct such false and fraudulent filings after being informed of the applicable law is a breach of that duty.

47. Schwab has, without any legal basis or justification, revealed private and

1 confidential information of Keebler to plaintiff and has presumably revealed private and
2 confidential information of plaintiff to others.  Such revelation of confidential
3 information violates Schwab's fiduciary obligations.

4     48.  Schwab has acted recklessly in handing confidential information.

5     49.  Plaintiff has been harmed by Schwab's actions.

## THIRD CLAIM FOR RELIEF

### (Schwab's Fraud)

8     50.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 to
9 49 of this Complaint as if fully set forth herein.

10     51.  Contemporaneously with the purchase of the assets by Plaintiff from
11 Keebler, plaintiff's IA reported the correct cost basis to Schwab.

12     52.  Schwab ignored the correct cost basis and failed to notify plaintiff that it
13 would be using some other cost basis unrelated to plaintiff's purchase price.   Indeed,
14 Schwab kept its refusal to follow federal tax law and plaintiff's IA's instructions in
15 secret.

16     53.  Only when plaintiff reviewed his Form 1099 for 2020 did he learn of the
17 covert actions by Schwab.  Plaintiff promptly took actions to seek to have Schwab
18 comply with federal tax law including several emails, a conference call with Schwab's
19 Cost Basis Team, and an attempt to reach directly Schwab's legal department.  Schwab
20 stonewalled all of these efforts.

21     54.  Schwab knows, and at all relevant times, knew, that its reporting to the
22 Internal Revenue Service was false and fraudulent.

23     55.  Schwab intended for the Internal Revenue Service to rely upon its false and
24 fraudulent statements.

25     56.  Plaintiff has been and is continuing to be harmed and damaged by Schwab's
26 false and fraudulent statements.

27     **WHEREFORE**, plaintiff requests relief and judgment against Defendant as
28 follows:

1. For preliminary and permanent injunctions requiring Schwab to comply with federal tax law;

2. For preliminary and permanent injunctions requiring Schwab to treat the securities purchased by plaintiff from Keebler on March 16, 2020 as "noncovered" securities as required by Internal Revenue Code §6045;

3. For preliminary and permanent injunctions requiring Schwab to correct its previous filings with IRS so that the sales of the noncovered securities by plaintiff are reported with gross proceeds only, as required by the Internal Revenue Code;

4. For preliminary and permanent injunctions requiring Schwab to report the sales of noncovered securities without any false, misleading or fraudulent assertions of basis, gains or losses;

5. For preliminary and permanent injunctions requiring Schwab, in subsequent years, to file true and accurate returns with respect to sales of the noncovered securities that plaintiff purchased from Keebler;

6. For damages suffered and to be suffered by plaintiff as a result of Schwab's false, fraudulent and/or improper actions;

7. For damages suffered as a result of Schwab's breach of its fiduciary obligations to plaintiff;

8. For punitive damages due to Schwab's intentional, willful, and malicious actions;

9. For attorneys' fees and accounting fees incurred by plaintiff in this dispute; and

10. For such other relief as the Court may deem just and proper.

Dated:  August 14, 2021

/s/ Neil D. Greenstein
Neil D. Greenstein, *Pro Se*